FILED IN CHAMBERS
U.S.D.C. Atlanta

JAN 2 5 2007

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PACIFIC SPECIALTY INSURANCE
COMPANY,

        Plaintiff

v.

RONDA WORTHINGTON and YOLANDA
DEVEAUX, individually and as
natural guardian of Natasha
Deveaux,

        Defendants

CIVIL ACTION NO.
1:06-CV-0376-ODE

ORDER

This case, in which Plaintiff Pacific Specialty Insurance Company seeks a declaratory judgment regarding its coverage obligations in an underlying state court action against its insured, is currently before the Court on Plaintiff's Motion for Summary Judgment [#10] and Defendant Yolanda Deveaux's Cross Motion for Summary Judgment [#14, #15]. Plaintiff asserts that Defendant Deveaux's claims against Defendant Worthington in the underlying state court action are excluded from coverage under Defendant Worthington's insurance policy at issue, therefore Plaintiff is not liable as a matter of law for Deveaux's injuries. Plaintiff also contends that it has no duty to defend its insured, Defendant Worthington, in the underlying state court action. Defendant Deveaux argues that Plaintiff waived the defense of non-coverage in this action both by failing to adhere to the required procedure for notifying its insured that it would be reserving its rights under the insurance policy and also because the insured has

been prejudiced by Plaintiff's assumption of her defense in the state court action. For the following reasons, Plaintiff's Motion for Summary Judgment [#10] is GRANTED. Defendant Yolanda Deveaux's Cross Motion for Summary Judgment [#14, #15] is DENIED.

I.   Factual and Procedural Background

Unless otherwise indicated, the following facts are undisputed.

A. The Homeowners' Insurance Policy

Between February 17, 2004 and February 17, 2005, Plaintiff Pacific Specialty Insurance Company ("Plaintiff," "insurer") held a homeowner's insurance policy, policy number WNG0190215-00 ("the policy"), for Defendant Ronda Worthington's ("Worthington,[2]" "insured") residence located at 2987 Rex Road, Rex, Georgia 30273.[3] Worthington resided at that address during the period of coverage

---

[1]When captioning this case, the Clayton County clerk of court entered Defendant Worthington's name as "Ronda" Worthington. It appears from the pleadings, in particular Worthington's Answer [#16], that Worthington's name is actually spelled "Rhonda" Worthington. For the sake of consistency, the Court will refer to Worthington as "Ronda," however the Court does note that this is an improper spelling of Ms. Worthington's name.

[2]The Court notes that both Rhonda Worthington and Yolanda Deveaux are named Defendants in this action. However, Rhonda Worthington has failed to participate in this action in any meaningful way and she has not responded to either Plaintiff's or Yolanda Deveaux's Motions for Summary Judgment. Therefore, for the sake of clarity and for the purpose of deciding the instant motions, the Court will refer to Defendant Rhonda Worthington as "Worthington" and to Defendant Yolanda Deveaux as "Deveaux."

[3]Worthington moved away from 2987 Rex Road, Rex, Georgia 30273, in February 2006. See Pl.'s Mot. for Summ. J., Exhibit A at lines 5-10.

with her two minor children and Worthington's son's dog, a pit bull.  The policy defines "insured" in such a way that Worthington and her minor children were all "insureds" during the period of coverage:

> **DEFINITIONS**
>
> \*\*\*
>
> 7. "Insured" means:
>     a.  "You";
>     b.  "Your" relatives if residents of "your" household;
>     c.  Persons under the age of 21 residing in "your" household and in "your" care or in the care of "your" resident relatives.

Compl. at ¶ 33.

The homeowner's insurance policy issued to Worthington by Plaintiff provides for Plaintiff to pay up to the policy limit for bodily injury or property damage caused by a covered occurrence at the insured premises.  Compl. at ¶ 31.  The policy states, in pertinent part:

> **LIABILITY COVERAGES**
>
> **PRINCIPAL COVERAGES – LIABILITY AND MEDICAL PAYMENTS TO OTHERS**
>
> **Coverage L – Personal Liability –** "We" pay, up to "our" "limit", all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies.

Id.  The policy also states that Plaintiff will provide a defense for the insured in a lawsuit resulting from a bodily injury or property damage that occurred at the premises.  Id.  However, the policy includes the following language that limits Plaintiff's duty to defend the insured:

> "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" not excluded under this coverage.  "We" may make

> investigations and settle claims or suits that "we"
> decide are appropriate. "We" do not have to
> provide a defense after "we" have paid an amount
> equal to "our" "limit" as a result of a judgment or
> written settlement.

Id.

In addition to the liability coverage for bodily injury or property damage occurring on the covered premises, the policy states that Plaintiff will pay medical expenses incurred as a result of an accident causing injuries covered by the policy. Id. The policy includes bodily injury caused by animals owned by the insured among the injuries for which Plaintiff will pay medical expenses:

> **Coverage M – Medical Payments to Others** – "we" pay
> the necessary medical expenses if they are incurred
> or medically determined within three years from the
> date of an accident causing "bodily injury" covered
> by this policy... This applies only to:
> ***
> 2. a person away from the "insured premises" if the
> "bodily injury":
> ***
> d. is caused by an animal owned by or in the care
> of an "insured."

Id.

Despite these detailed provisions concerning Plaintiff's liability under the policy, a number of endorsements supplemental to the policy purport to limit Plaintiff's liability with respect to incidents occurring at or near the insured premises. First, an endorsement entitled "Animal Liability Exclusion," numbered GA-HO-M4 (Ed 1.0), modifies the policy's coverage of bodily injuries caused by animals. The Animal Liability Exclusion states:

> It is understood and agreed that this insurance
> does not apply to any occurrence or damages caused
> by any animal, at any time, at any premises insured
> hereunder.

4

> It is understood and agreed that this insurance does not apply to any occurrence or damages caused by, arising out of, or in any way related to any animal owned by or in the care, custody or control of the insured, or any member of the insured's family or household.

Compl., Exhibit A at 26.  Second, a Personal Injury endorsement to the policy, numbered ML-46 Ed. 1.0, limits Plaintiff's liability under the policy to pay for personal injury "which results from the willful violation of a law or ordinance by, at the direction of, or with the knowledge or consent of an 'insured'." Id. at 7.

In addition to the endorsements appended to the policy, the policy itself conditions Plaintiff's liability on the performance of certain reciprocal obligations by the insured.  First, the policy instructs the insured to notify Plaintiff upon the occurrence of an event that could give rise to a claim.  The policy states, in pertinent part:

**WHAT YOU MUST DO IN CASE OF LOSS OR CLAIM**

1. **Notice** –

    a. In case of a loss, the "insured" must:
       1) give "us" or "our" agent prompt notice ("We" may request written notice.);
    b. The notice to "us" must state:
       1) the name of the "insured", the policy number, and the time, place, and the details of the loss; and
       2) The names and addresses of all known potential claimants and witnesses.

2. **Cooperation** – The "insured" must cooperate with "us" in performing all acts required by this policy.

Compl. at ¶ 34.  Second, the policy instructs the insured to do the following once a claim has been filed:

6. **Other duties – Personal Liability Coverage** – In case of an "occurrence" which might result in a claim, the "insured" must promptly give "us" copies

5

of all notices, demands, and legal papers that
relate to the "occurrence" or the claim.

At "our" request, the "insured" must help "us":
    a. to settle a claim;
    b. to conduct suits. This includes being at
       trials and hearings;
    c. to enforce the right of recovery or
       indemnification against all parties who may
       be liable to an "insured" for the injury or
       damage;
    d. in the securing of an giving of evidence; and
    e. in obtaining the attendance of all witnesses.

Id. Finally, the policy states that it is void in case of
misrepresentation, concealment or fraud:

7. **Misrepresentation, Concealment, or Fraud** – This
policy is void as to "you" and any other "insured"
if before or after a loss:

    a. "you" or any "insured" has willfully
       concealed or misrepresented:

         1) a material fact or circumstance that
           relates to this insurance or the subject
           thereof; or
         2) an "insured's" interest herein; or

    b. there has been fraud or false swearing by
       "you" or any other "insured" with regard to
       a matter that relates to this insurance or
       the subject thereof.

Id.

B. The State Court Action

On April 9, 2004, Natasha Deveaux, a minor, was injured after
being attacked by Worthington's pit bull dog. Natasha Deveaux
was walking along Rex Road past a gravel driveway which allows
access to several homes, including Worthington's former residence,
2987 Rex Road. As Natasha Deveaux passed Worthington's property,
Worthington's pit bull suddenly ran from Worthington's property
and attacked her. Natasha Deveaux fled to avoid the dog's attack

6

and in doing so was forced to enter Rex Road.  She was then hit by a passing automobile.  Natasha Deveaux suffered serious bodily injury from the incident.

On December 7, 2004, Defendant Yolanda Deveaux, Natasha Deveaux's mother, filed a complaint in the Superior Court of Clayton County, Georgia, against the driver of the automobile that struck Natasha Deveaux.  After receiving the court's permission, Deveaux filed an amended complaint on February 16, 2005, adding Rhonda Worthington as a defendant in the state court action.  In the amended complaint, Deveaux alleges that Worthington was negligent with regard to her pit bull.  The action is now titled <u>Yolanda Deveaux, individually and as natural guardian of Natasha Deveaux v. John Westley Sapp and Ronda Worthington</u>, 04-CV-4469-6 (hereinafter referred to as "state court action").  Apparently, Worthington's daughter was served with the amended complaint on February 22, 2005. Worthington did not answer the amended complaint.  Worthington went into default in the state court action on March 24, 2005.

On June 10, 2005, Deveaux's counsel Larry Melnick notified Jeffrey Owen, Plaintiff's senior counsel, of the lawsuit filed in Clayton County Superior Court by Deveaux.  This was Plaintiff's first notification of the incident involving Natasha Deveaux and of the claims and lawsuit against Worthington filed by Deveaux. Plaintiff's senior counsel requested more information from Deveaux's counsel about Deveaux's claims against Worthington. Consequently, Deveaux's counsel provided Plaintiff's counsel with some of the pleadings filed in the case against Worthington as

well as other information it had collected about the incident at Worthington's property.

Plaintiff retained the law firm of Carlock, Copeland, Semler & Stair, LLP ("Worthington's counsel") to defend Ronda Worthington in the state court action. Worthington's counsel filed a notice of appearance, along with a motion to open the default, on November 23, 2005. Yolanda Deveaux consented to opening the default, and the court entered an order opening the default on November 28, 2005. Between December 9, 2005 and December 14, 2005, Worthington's counsel filed an answer, a supplementary answer, and responses to Deveaux's first interrogatories and requests for documents and admissions. Also in December, counsel for Worthington and Yolanda Deveaux agreed upon dates to conduct the depositions of Sapp, Worthington, and Natasha and Yolanda Deveaux.

On January 26, 2006, Plaintiff issued a reservation of rights letter to Worthington. The reservation of rights letter was mailed to Worthington on January 31, 2006, and personally served on Worthington on February 9, 2006. The reservation of rights letter stated that Plaintiff would provide Worthington with a defense in the state court action. See Compl., Exhibit D. However, the reservation of rights letter also stated that Plaintiff "reserves all of its rights to deny coverage and/or a defense" to Worthington under the homeowners insurance policy. Id. The letter then describes Plaintiff's several bases for its reservation of rights, which include two previous leash law violations by Worthington for the pit bull dog that attacked Natasha Deveaux, Worthington's failure to restrain the pit bull

8

dog despite Clayton County's leash and animal nuisance laws, and Worthington's failure to answer in the affirmative a question on her insurance application regarding whether she owned an animal with a previous bite history.   Id.

### C. The Instant Action

Plaintiff filed this declaratory judgment action on February 21, 2006, to determine the existence of its duty to defend, indemnify and/or afford coverage to Worthington in the state court action under and pursuant to the homeowners' insurance policy. Deveaux answered the Complaint on March 9, 2006. Worthington, was issued a summons [#7] on April 12, 2006, and filed a pro se Answer on June 6, 2006. Worthington's Answer [#16] is the sole pleading filed by her in this case to date.

Prior to filing the instant Motion for Summary Judgment, Plaintiff filed a Motion to Stay the state court proceedings [#2] which this Court denied in an Order signed on May 16, 2006 [#11]. Prior to filing the instant Cross Motion for Summary Judgment, Deveaux filed a Motion for Judgment on the Pleadings [#4], which this Court also denied in the May 16, 2006 Order [#11].

Plaintiff filed the instant Summary Judgment Motion on May 9, 2006; Deveaux timely responded on May 30, 2006.  Deveaux filed the instant Cross Motion for Summary Judgment on May 30, 2006; Plaintiff timely responded on June 16, 2006.  Worthington has not responded to either motion.

9

II.   Standard of Review on a Summary Judgment Motion

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   In ruling on a summary judgment motion, the Court must view the evidence in a light most favorable to the non-moving party.   Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Further, the Court may not make credibility determinations, weigh the evidence, or draw inferences from the facts.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

To prevail in its motion for summary judgment, the moving party must show that the evidence is insufficient to establish an essential element of the non-moving party's case.   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).   If the moving party makes a sufficient showing, then the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"   Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   If the evidence supporting the non-moving party's claims is insufficient for a jury to return a verdict for the non-moving party, or is "merely colorable" or "not significantly probative," then the moving party is entitled to summary judgment.   Anderson, 477 at 249.   If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a verdict for the non-moving party, then summary judgment is inappropriate. Id. at 251-52.

10

III. Defendant Deveaux's Cross-Motion for Summary Judgment

In its Complaint and its Motion for Summary Judgment, Plaintiff focuses on the language contained within the homeowners insurance policy (especially the endorsements and notice provisions) it issued to Worthington to argue that the policy does not cover Natasha Deveaux's injuries. Deveaux admits in her Cross-Motion for Summary Judgment [#14, #15] that the homeowners' insurance policy excludes from coverage the losses suffered by Natasha Deveaux. However, Deveaux argues in her response [#13] and also in her Cross-Motion for Summary Judgment that Plaintiff waived the right to contest coverage by failing to issue a timely and effective reservation of rights letter to Worthington and that Worthington has been prejudiced by Plaintiff's assumption of her defense in the state court action. According to Deveaux, the question of waiver is a question of law and is the only issue for the Court to decide in this case. Because Deveaux's waiver argument also constitutes her defense to Plaintiff's Motion for Summary Judgment, the Court will address Deveaux's motion first, followed by Plaintiff's motion. As stated below, Deveaux actualy has no standing to raise issues of waiver and coverage; however, the Court will nonetheless rule on these issues before addressing the standing issues.

A. Waiver

In Georgia, an insurer may waive the defense of noncoverage for claims under an insurance policy if "the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of

11

noncoverage." <u>Prescott's Altama Datsun, Inc. v. Monarch Insurance Company of Ohio</u>, 319 S.E.2d 445, 446 (Ga. 1984).  The insurer can avoid waiver and estoppel by giving the insured "timely notice" of its reservation of rights where such notice "fairly inform[s] the insured of the insurer's position."  <u>State Farm Mut. Auto. Ins. Co. v. Anderson</u>, 123 S.E.2d 191, 193 (Ga. Ct. App. 1961).

The insured must consent to the insurer's notice of its reservation of rights.  <u>Id.</u>  However, the insured's consent may be express or implied, and the insured's permitting the insurer to continue the defense of the suit against her after having received the insurer's reservation of rights constitutes implied consent. <u>Id.</u>

When evaluating the timeliness and sufficiency of the insurer's notice of its reservation of rights and whether the insured has consented to it, "the key word is 'prejudice.'" <u>Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio</u>, 317 S.E.2d 845, 848 (Ga. Ct. App. 1984).  A court must look at the conduct of the both the insurer and the insured and determine whether one party's behavior has prejudiced the other party's legal position. <u>Ponse v. Atlanta Cas. Co.</u>, 563 S.E.2d 499, 502 (Ga. Ct. App. 2002).  "[A] showing of prejudice to the other party appears to be the central requirement of waiver implied from conduct." <u>Id.</u>

B. <u>Deficiencies With Respect to the Reservation of Rights Letter</u>

Deveaux submits two waiver arguments with respect to Plaintiff's reservation of rights letter.  First, Deveaux argues

12

that Plaintiff failed to issue a reservation of rights letter prior to undertaking Worthington's defense in the state court action, therefore Plaintiff has waived its right to contest coverage.   Second, Deveaux argues that Plaintiff had full knowledge of the facts constituting noncoverage under the homeowners' insurance policy when it assumed Worthington's defense, long before it issued the reservation of rights letter, and that Plaintiff's assumption of Worthington's defense notwithstanding this knowledge constitutes waiver of the noncoverage defense.

Plaintiff responded to each of Deveaux's arguments. First, Plaintiff contends that its reservation of rights letter was timely even though it was issued after Plaintiff had filed responsive pleadings in the state court action. Second, Plaintiff argues that Worthington's implied consent to Plaintiff's reservation of rights and the fact that Worthington has not been prejudiced by Plaintiff's defense in the state court action bar application of the doctrine of waiver and estoppel in this case.

### 1. Timing of the Reservation of Rights Letter

The "proper and safe" course of action for an insurer is to issue a reservation of rights letter _before_ assuming and conducting a defense on behalf of its insured and before seeking a declaratory judgment. See Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d 245, 247 (Ga. Ct. App. 1976) ("A proper and safe course of action for an insurer in this position is to enter upon a defense under a reservation of rights and then proceed to seek a declaratoy judgment in its favor."); see also Anderson, 123

13

S.E.2d at 193-94 (upholding insurer's letter to insured regarding coverage issues sent prior to filing an answer on insured's behalf as an effective reservation of rights by insurer); State Farm Mut. Auto. Ins. Co. v. Wheeler, 287 S.E.2d 281, 283 (Ga. Ct. App. 1981) ("A liability insurer is estopped to deny coverage unless it makes a reservation of rights *prior to assuming and conducting the defense* of the action brought against its insured.").

However, an insurer's reservation of rights may still be effective even when issued <u>after</u> the insurer assumes and begins conducting a defense of the insured. Prejudice is the key factor. For example, in Moody v. Pennsylvania Millers Mutual Insurance Company, 263 S.E.2d 495 (Ga. Ct. App. 1979), the insureds waited to notify their insurer of a personal injury suit filed against them until the last day on which defensive pleadings could be filed without default. The insurer immediately retained counsel and filed a timely answer to avoid default, and sixteen days later presented the insureds with a reservation of rights, to which they expressly consented. The Moody court held that "[a]lthough the insurance company...did not assert a reservation of rights at the time it filed its answer to the personal injury suit...no estoppel resulted, since the insured's delay in notifying the company of the suit deprived the company of any prior opportunity to investigate the claim." Id. at 496. In other words, the insureds' failure to notify the insurer until such a time when the insurer had to act immediately or else risk default judgment in the personal injury suit prejudiced the insurer's legal position, therefore no estoppel resulted. Preferred Risk Mutual Insurance Company v. Southern Guaranty Insurance Company of Georgia, 353

14

S.E.2d 590 (Ga. Ct. App. 1987) (hereinafter "Preferred Risk"), provides another example. In Preferred Risk, the insured notified the insurer of the lawsuit filed against her and the insurer thereafter filed an answer in that action on the insured's behalf. The insurer did not give the insured notice of its reservation of rights until the next day.  The Preferred Risk court held that the insurer "acted to prevent default and the fact that it did not give its reservation of rights notice until the following day did not prejudice its insured; this is the crucial factor in such situation [sic]." Id. at 591.  The Preferred Risk court also found that "[f]iling an answer to forestall default does not constitute assuming and conducting the defense to insured's detriment so as to forfeit insurer's rights." Id.

In the instant case, neither Worthington nor Deveaux informed Plaintiff that there was a lawsuit pending against Worthington until default had already been entered against Worthington in the state court action.  Although Deveaux provided Plaintiff with information it had collected about Natasha Deveaux's accident after notifying Plaintiff of the state court action, Plaintiff did not know to investigate the accident until June 10, 2005. Furthermore, once Plaintiff did assume the defense of the action against Worthington, Plaintiff took only limited, preliminary steps.  In a short three week timespan between November 28, 2005, and December 14, 2005, the counsel Plaintiff hired to defend Worthington merely opened the default; filed an answer and a supplementary answer; and responded to Deveaux's initial discovery requests. Although Deveaux disputes the date upon which Plaintiff first attempted to contact Worthington to notify her of its

15

reservation of rights, Plaintiff contends it first mailed Worthington a reservation of rights letter on December 20, six days after filing the last defensive pleading on Worthington's behalf in the state court action.  At the latest, Plaintiff sent Worthington a reservation of rights letter on January 31, 2006, and there is no indication that there was any activity in the state court litigation between December 14, 2005, and January 31, 2006, such as would require Plaintiff to actively defend Worthington during that time.

Based upon these facts, the Court concludes that Plaintiff's notice to Worthington of its reservation of rights was timely. Even though Plaintiff sent the notice to Worthington after assuming and beginning to conduct a defense on Worthington's behalf in the state court action, Worthington was not prejudiced by the delay in notification.  Furthermore, Worthington's failure to inform Plaintiff of the lawsuit pending against her came perilously close to prejudicing Plaintiff's legal position in the state court action.   The Court finds that no estoppel resulted from Plaintiff's notification of its reservation of rights after first assuming Worthington's defense in the state court action.


2.   Plaintiff's Knowledge of Facts Constituting Noncoverage

Deveaux argues that Plaintiff was aware of facts constituting noncoverage when Plaintiff assumed Worthington's defense in the state court action in November 2005.  Plaintiff has not contested this assertion.   However, Plaintiff argues that the fact of Worthington's consent to Plaintiff's reservation of rights and the

16

fact that Worthington has not been prejudiced by Plaintiff's assumption of her defense requires a conclusion by this court that Plaintiff did not waive the defense of noncoverage  in the state court action.

While it is true that the Georgia Supreme Court has stated that an insurer is estopped from asserting noncoverage under the insurance policy when the insurer, "without reserving its rights, assumes the defense of an action or continues such defense <u>with knowledge, actual or constructive, of noncoverage</u>," <u>Prescott's Altama Datsun, Inc. v. Monarch Insurance Company of Ohio</u>, 319 S.E.2d 445, 446 (Ga. 1984) (emphasis added), it is also true that the insurer can avoid the application of estoppel by giving the insured "timely notice" of its reservation of rights where such notice "fairly inform[s] the insured of the insurer's position." <u>State Farm Mut. Auto. Ins. Co. v. Anderson</u>, 123 S.E.2d 191, 193 (Ga. Ct. App. 1961).  Therefore, 1) timely and 2) effective waiver 3) to which the insured consented is sufficient to bar the application of estoppel.

In this case, it is not entirely clear whether Plaintiff had actual or constructive knowledge of facts constituting noncoverage when it assumed Ms. Worthington's defense in the state court action.  Plaintiff and Deveaux agree that Deveaux supplied Plaintiff with information about the state court action, including information Deveaux had uncovered regarding Plaintiff's previous leash law violations with respect to the pit bull.  However, the pleadings also indicate Ms. Worthington's unremitting failure to either participate in the action or cooperate with Plaintiff in investigating the facts surrounding Natasha Deveaux's accident.

17

Plaintiff's difficulty serving Worthington with its reservation of rights letter also implies that Worthington made Plaintiff's investigation of Natasha Deveaux's accident and Worthington's involvement in it difficult if not impossible. Georgia case law implies that "actual or constructive knowledge of facts" means that the insurer has had time to fully investigate all facts constituting non-coverage; mere awareness that the facts might constitute non-coverage does not seem to be enough. See e.g. Richmond, 231 S.E.2d at 248-49 (insurer notified insured of facts it had discovered that might lead to non-coverage after investigation); Moody, 263 S.E.2d at 495-96 (because insured did not notify insurer of pending lawsuit until the last day on which defensive pleadings could be filed, insurer's reservation of rights letter issued sixteen days after filing an answer in the underlying case was acceptable because the insured's delay in notifying insurer deprived the insurer of opportunity to investigate facts that might lead to non-coverage. Upon learning facts that might constitute non-coverage, insurer issued reservation of rights letter- the appropriate procedure). In this case, it seems clear from both the facts and from the text of Plaintiff's reservation of rights letter that Plaintiff was only aware of facts that might lead to non-coverage at the time it issued the letter.

Notwithstanding any uncertainty with respect to the depth of Plaintiff's knowledge of the facts constituting noncoverage in this action, this Court finds that Plaintiff's reservation of rights was timely and effective and that Worthington consented to it. As discussed above, Plaintiff's reservation of rights letter

18

was timely even though sent to Worthington after Plaintiff filed an answer in the state court action.

Plaintiff's reservation of rights letter was also effective in notifying Worthington of Plaintiff's intentions with respect to defense of the state court action. In <u>Richmond v. Georgia Farm Bureau Mutual Insurance Company</u>, the Georgia Court of Appeals endorsed the procedure the insurer in that case followed to notify its insured of its reservation of rights prior to filing an answer in the underlying action. <u>See</u> <u>Richmond</u>, 231 S.E.2d at 249 ("We recommend the procedure followed by the insurance company in this case as being fair to both the insured and insurer."). The <u>Richmond</u> court then described in detail the reservation of rights notice the insurer gave to its insured:

> The notice expressed what facts might constitute non-coverage, that the insurer would proceed to investigate those facts, that the insurer intended to seek a declaratory judgment as to what its obligations under the policy were to the insured under the circumstances, that pending such a determination it was going to provide insured with counsel and enter a defense, that in pursuing this course of action it did not waive any of its rights, and that should a court determination be in its favor it intended to withdraw from the suit and afford the insured no defense and benefits under the policy vis-a-vis the action or claim by the injured party.

<u>Id.</u> Plaintiff's reservation of rights letter follows the format recommended in <u>Richmond</u> exactly. Plaintiff's reservation of rights letter provides, in pertinent part:

> RE: <u>Yolanda Deveaux v. Ronda Worthington, et al</u>
>
> \*\*\*
>
> Dear Ms. Worthington
>
> \*\*\*

19

Please accept this letter as PSIC's notification of its reservation of rights with respect to coverage and PSIC's duty to defend you.

Having reviewed the allegations of the complaint filed against you by Ms. Deveaux, PSIC has decided to provide you with a defense to Deveaux's claims under a full and complete reservation of rights. PSIC reserves all of its rights to deny coverage and/or a defense to you under the insurance policy and/or applicable law with respect to Deveaux's claims. The basis for the reservation of rights and potential defenses to coverage and/or a duty to defend you in this action are discussed in further detail below.

* * *

Please note that PSIC may file and prosecute a declaratory judgment action so that a court of competent jurisdiction can resolve the coverage issues described below. In the event that a declaratory judgment action is filed, PSIC will <u>not</u> provide you with counsel and, you will be responsible for retaining and compensating your own attorney to defend your interests in that specific lawsuit.

If the declaratory judgment action results in a finding of no coverage and/or no duty to defend you with respect to the Deveaux litigation, PSIC may withdraw from defending you in this case, and PSIC will then seek to recover from you the costs and expenses incurred in defending you in the Deveaux litigation...

The following is a recitation of the bases for PSIC's reservation of rights in this matter:

FACTUAL BACKGROUND AND ALLEGATIONS
[recitation of facts described in part I of this Order]

* * *

ANALYSIS OF COVERAGE
[recitation of policy provisions discussed in part I of this Order]

* * *

Based upon the facts of the claim as set forth in the plaintiff's complaint and upon your conduct since the complaint was filed against you, it appears that there may be no coverage or duty to defend you because

20

1. The animal liability exclusion specifically provides that this policy does not apply to any occurrence or damages caused by any animal at any time on any premises

2. You failed to provide proper notice to PSIC of the occurrence underlying this claim

3. You failed to provide notice and/or a copy of the complaint to PSIC

4. You have failed to cooperate in the investigation of the occurrence underlying this claim and have failed to cooperate with defense counsel retained on your behalf by PSIC in defense of this action against you

5. There is no liability coverage for personal injury to the extent that injury resulted from the willful violation of any law or ordinance, including any applicable leash laws

6. You may have misrepresented and/or concealed a material fact or circumstance that relates to this insurance to the extent that you answered the following question on your application in the negative: "Does the applicant own, keep, or plan to own any animals with a previous bite history or farm animals, or any exotic or unusual pets?"

Despite the foregoing...PSIC is willing to investigate the claims in the Deveaux lawsuit and to provide you with a defense at the insurer's expense under a full and complete reservation of rights as set forth in this letter. Until such time as PSIC has had the opportunity to fully investigate and analyze the coverage and factual issues and considerations that are presented in the Deveaux lawsuit, you should not assume that PSIC by agreeing to defend you under this reservation of rights is in any way, waiving, abandoning, or withdrawing any of its coverage defenses.

\* \* \*

Your agreement to this reservation of rights will be prescribed unless you reject it in writing.

Compl., Exhibit D. The Court finds that Plaintiff's reservation of rights letter "fairly inform[s] the insured of the insurer's position." State Farm Mut. Auto. Ins. Co. v. Anderson, 123 S.E.2d 191, 193 (Ga. Ct. App. 1961).

Finally, Worthington impliedly consented to Plaintiff's reservation of rights.   After receiving Plaintiff's letter, Worthington allowed Plaintiff to continue her defense in the state court action.   Worthington also never rejected Plaintiff's reservation of rights in writing, as she was directed to do by the reservation of rights letter itself.

Because the Court finds as a matter of law that no deficiencies exist as to either the timing or the content of Plaintiff's reservation of rights letter, the Court denies Deveaux's waiver argument on this basis.

C.   Argument that Worthington Has Been Prejudiced by Plaintiff's Assumption of Her Defense in the State Court Action

Deveaux argues that Plaintiff has waived its defense of non-coverage because Worthington has been prejudiced by Plaintiff's assumption of and control over the defense of the state court action.   Plaintiff responds that its limited activities on Worthington's behalf in the state court action have not prejudiced Worthington and argues instead that Worthington prejudiced Plaintiff in that action by allowing the case to go into default without informing Plaintiff and by avoiding Plaintiff's efforts to deliver its reservation of rights letter to her.

Plaintiff also contends that Deveaux has no standing under Georgia law to argue that Plaintiff has waived the defense of non-coverage.   Plaintiff asserts that Deveaux is not in privity of contract with Plaintiff and therefore cannot sue Plaintiff directly.   Because this Court has already discussed the issue of prejudice to Worthington as a result of Plaintiff's assumption of

22

her defense, and having concluded that Worthington's actions likely prejudiced Plaintiff instead, the Court turns to Plaintiff's argument that Deveaux does not have standing to assert that Plaintiff has waived the defense of non-coverage.

Plaintiff cites <u>Capitol Indemnity Corporation v. Fraley</u>, 597 S.E.2d 601 (Ga. Ct. App. 2004), for the proposition that a third party to an insurance contract cannot assert waiver or estoppel against the insurer. Because the facts of <u>Fraley</u> are similar to the facts in the instant case, a brief synopsis of <u>Fraley</u> follows.

In <u>Fraley</u>, the victim of an assault and battery by bartenders and/or bouncers outside a bar, Thomas Fraley, sued the bar to recover damages. <u>Id.</u> at 602. Although it was notified of Fraley's claims in September 2001, Capitol Indemnity (the insurer) did not notify the bar (the insured) of its reservation of rights under the insurance policy it held for the bar until December 2001. <u>Id.</u> Capitol Indemnity then filed a declaratory judgment action in January 2002 naming both Fraley and the bar as defendants and seeking a judicial determination as to whether coverage existed for Fraley's claims. <u>Id.</u> The trial court, ruling on Capitol Indemnity's motion for summary judgment on the declaratory judgment petition and persuaded by waiver arguments raised by Fraley, held that Capitol Indemnity was estopped from raising the defense of non-coverage because it waited two and one-half months before notifying its insured that it was reserving its rights under the policy. <u>Id.</u>

On appeal, Capitol Indemnity argued that Fraley did not have standing to assert the defense of waiver or estoppel because Fraley was a third party to the insurance contract. <u>Id.</u>

23

According to Capitol Indemnity, only its insured, the bar, could assert those defenses in connection with the insurance contract because only the insured was in privity of contract with Capitol Indemnity.  Id.   The Georgia Court of Appeals sided with Capitol Indemnity and reversed the trial court's judgment.   Id. at 603. Analogizing to contract law, the Fraley court held that Fraley as the injured party and not a party to the insurance contract had no rights under the Capitol Indemnity policy and therefore could not sue Capitol Indemnity directly.   Id.   By extension, Fraley was also barred from asserting the defense of waiver or estoppel against Capitol Indemnity for its failure to issue a timely notice of reservation of rights.   Id.   The Fraley court held that "Capitol Indemnity's right to deny coverage flows only to its insured and Fraley may not complain about Capitol Indemnity's failure to provide a timely reservation of rights notice."   Id.

This Court cannot deny Fraley's factual similarity to and precedential authority over the instant case.   In this case, Deveaux is a third party to and therefore has no rights under the insurance   policy   issued   by   Plaintiff   to   Worthington. Consequently, Deveaux does not have standing to assert the defense of waiver or estoppel against Plaintiff.

The Court hereby DENIES Defendant Deveaux's Cross-Motion for Summary Judgment.

IV.   Plaintiff's Motion for Summary Judgment

Plaintiff argues in its Motion for Summary Judgment that there is no genuine issue as to any material fact with respect to Plaintiff's freedom from liability for Natasha Deveaux's injuries

and medical expenses under the homeowners' insurance policy. Plaintiff asserts that the Animal Liability Exclusion endorsement to the insurance policy unambiguously excludes from the policy's liability coverage injuries caused by any animal owned by or in the care of Worthington, Plaintiff's insured.  Furthermore, Plaintiff contends that Worthington's complete failure to notify Plaintiff of the incident involving Natasha Deveaux constitutes failure to satisfy the insurance policy's terms and conditions precedent.  Therefore, Plaintiff concludes that it is not liable to Deveaux for Natasha Deveaux's injuries because the terms of Worthington's homeowner's insurance policy explicitly exclude injuries caused by Worthington's pit bull dog.  Because the insurance policy does not cover Deveaux's claims, Plaintiff also concludes that it has no duty under the policy to defend Worthington in the state court action.

Deveaux responds to Plaintiff's argument by admitting that the Animal Liability Exclusion excludes all coverage for Natasha Deveaux's injuries. <u>See</u> Def.'s Brief in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross Mot. for Summ. J. [#13] at 6 ("Defendant Deveaux admits that coverage under the policy issued by [Plaintiff] for the loss will be excluded pursuant to an exclusion in the policy.") Instead, Deveaux argues that Plaintiff waived its right to contest coverage under the policy because Plaintiff failed to issue a reservation of rights letter before it assumed Worthington's defense in the state court action.  Because the Court has already rejected Deveaux's waiver argument, the Court will address only Plaintiff's arguments regarding coverage below.

A. <u>Duty to Indemnify</u>

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." <u>Richards v. Hanover Ins. Co.</u>, 299 S.E.2d 561, 563 (Ga. 1983). Although insurance contracts will be construed against the insurer if the provisions are ambiguous, "if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written." <u>Sapp v. State Farm Fire & Cas. Co.</u>, 486 S.E.2d 71, 73 (Ga. Ct. App. 1997). "Interpretation of policy provisions which are plain and definite is a matter of law for the trial court." <u>Id.</u>

The Court finds the language of the homeowners' insurance policy at issue in the instant action to be unambiguous. The Animal Liability Exclusion states:

> It is understood and agreed that this insurance does not apply to any occurrence or damages caused by any animal, at any time, at any premises insured hereunder.

> It is understood and agreed that this insurance does not apply to any occurrence or damages caused by, arising out of, or in any way related to any animal owned by or in the care, custody or control of the insured, or any member of the insured's family or household.

Compl., Exhibit A at 26. The Animal Liability Exclusion plainly and definitely excludes injuries such as those suffered by Natasha **Deveaux** from coverage under the homeowners' insurance policy.

B. <u>Duty to Defend</u>

"An insurer's duty to defend and its duty to indemnify are separate and independent obligations." <u>City of Atlanta v. St. Paul Fire & Marine Ins. Co.</u>, 498 S.E.2d 782, 785 (Ga. Ct. App. 1998). "An insurer's duty to defend turns on the language of the

26

insurance contract and the allegations of the complaint asserted against the insured." <u>Georgia Farm Bureau Mut. Ins. Co. v. Vanhuss</u>, 532 S.E.2d 135, 136 (Ga. Ct. App. 2000). If the allegations in the complaint "even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." <u>Id.</u> Conversely, if the complaint "does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit." <u>Id.</u>

The terms of the homeowners' insurance policy clearly state that Plaintiff will not defend a suit seeking damages that are excluded from coverage:

> "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" not excluded under this coverage. "We" may make investigations and settle claims or suits that "we" decide are appropriate. "We" do not have to provide a defense after "we" have paid an amount equal to "our" "limit" as a result of a judgment or written settlement.

Compl. at ¶ 31. Because all of Yolanda Deveaux's claims in the state court complaint arise out of Natasha Deveaux's encounter with Worthington's pit bull, and because the homeowners' insurance policy clearly excludes such claims from coverage, the Court finds that Plaintiff is justified in refusing to defend Worthington's lawsuit. Plaintiff has no duty to defend Worthington in the state court action.

The Court hereby GRANTS Plaintiff's Motion for Summary Judgment and declares that the homeowners' insurance policy at issue clearly and unambiguously excludes from coverage claims arising out of damage caused by Worthington's pit bull, which includes all claims asserted by Yolanda Deveaux in the state court action. Because Deveaux's claims in the state court action are

excluded from coverage under the policy, the Court also declares that Plaintiff has no obligation to defend Worthington in the state court action.

V.   CONCLUSION

For the foregoing reasons, Defendant Deveaux's Cross-Motion for Summary Judgment [#14, #15] is DENIED.  Plaintiff's Motion for Summary Judgment [#10] is GRANTED.  The Clerk is directed to enter judgment in favor of Plaintiff.

SO ORDERED, this _25_ day of January, 2007.

_____
ORINDA D.  EVANS
UNITED STATES DISTRICT JUDGE

28